# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |
|---|---|
| **CARTER & CARTER CONSTRUCTION, LLC, et al.,**<br>　　　Plaintiffs,<br><br>**v.**<br><br>**ZURICH AMERICAN INSURANCE COMPANY, et al.,**<br>　　　Defendants. | **Case No. 3:22-cv-137-CLM-SMD** |

## <u>MEMORANDUM OPINION</u>

Carter & Carter Construction, LLC is an Alabama-based construction company that specializes in multi-family residential and mixed-use projects. Defendants Zurich American Insurance Company, Fidelity & Deposit Insurance Company of Maryland, and Colonial American Casualty and Surety Company (collectively, "the Surety") issued payment and performance bonds for several Carter & Carter projects, including projects in South Carolina, Texas, and Alabama. In exchange for these bonds, Plaintiffs Carter & Carter Construction, LLC, Precision Builders, LLC, Carter & Carter Real Estate, LLC, Flight Club Aviation, LLC, N3CC, LLC, Casey M. Carter, and Bradley Collin Carter (collectively, "Carter & Carter") signed an indemnity agreement in favor of the Surety.

Disputes over the indemnity agreement have spawned litigation in at least three courts. In this court, Carter & Carter brings two breach of contract and two declaratory judgment claims against the Surety. (Doc. 48). The Surety moves to dismiss Carter & Carter's complaint. (Doc. 52). For the reasons explained within, the court will **GRANT IN PART** and **DENY IN PART** the motion to dismiss (doc. 52).

1

### STATEMENT OF THE ALLEGED FACTS

Carter & Carter entered into a general indemnity agreement with the Surety as a condition of the Surety providing payment and performance bonds for some of Carter & Carter's construction projects. (Doc. 48 ¶¶ 16–17). Relevant here are two provisions of the indemnity agreement. The first explains when Carter & Carter is liable to the Surety for indemnification:

> 2. INDEMNITY: Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability.  The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed.  Indemnitors shall promptly, upon demand, make payment to Surety as soon as liability or Loss exists, whether or not Surety has made any payment.  An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be prima facie evidence of the fact, amount and extent of the liability of Indemnitors for such Loss.  Indemnitors shall promptly, upon demand, procure the full and complete discharge of Surety from all Bonds and all liability in connection with such Bonds.  If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations.

(Doc. 48-1 at 2). The second defines "good faith" to mean "with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Principal and indemnitors." (*Id.* at 6).

### A.    Weco Project

Carter & Carter asserts that it has defended the Surety against claims when requested and otherwise fully performed its indemnification obligations. (Doc. 48 ¶ 23). Despite Carter & Carter's performance, the Surety demanded in January 2022 that Carter & Carter pay it a total of $819,737.47. (*Id.* ¶ 24). The Surety claimed that it had incurred $519,737.47 in expenses for claims and lawsuits related to projects in West Columbia, South Carolina and Frisco, Texas. (Doc. 48-2). And the Surety demanded $300,000 to protect it from further loss. (*Id.*).

At that time, Carter & Carter was owed $525,000 for the West Columbia, or "Weco," project. (Doc. 48 ¶ 25). The Registrar of Deeds in Lexington County, South Carolina was holding the funds pending the outcome of litigation between Carter & Carter and the Weco project owner. (*Id.* ¶ 26). According to Carter & Carter, the Surety sent the demand letter to retaliate against Carter & Carter for refusing to pay the Surety the $525,000. (*Id.* ¶ 27).

In February 2022, the Surety sent Carter & Carter a second demand letter demanding that Carter & Carter deposit collateral of $17 million to protect the Surety from further loss under the indemnity agreement. (*Id.* ¶ 28). Carter & Carter says that the Surety has failed to provide information to support this demand for payment and denies that the indemnity agreement requires depositing $17 million with the Surety. (*Id.* ¶¶ 29–30).

Also in February 2022, a South Carolina court ordered that the Weco project owner pay the full $525,000 in disputed funds to Carter & Carter. (*Id.* ¶ 31). The court ordered that the funds not be distributed to the Surety because the Surety provided nothing to support its entitlement to the funds. (*Id.*). According to Carter & Carter, the Surety's actions have maliciously interfered with Carter & Carter's ability to receive payment of the Weco project funds and the Surety's demand to receive those funds is unfounded. (*Id.* ¶ 33). Carter & Carter also says that the Surety's demand letters breach the indemnity agreement because the Surety's actions weren't taken in good faith as defined in the contract. (*Id.* ¶¶ 35–37).

## B.   Alabama Project

Another construction project that Carter & Carter has worked on is the construction of the Samford Trace Apartments in Auburn for Samford Glenn, LLC. (*Id.* ¶ 38). The Surety issued Carter & Carter payment and performance bonds for this project. (*Id.* ¶ 39). To close out its work on this project, Carter & Carter must provide Samford Glenn proof that the Surety consents to final payment. (*Id.* ¶ 40). And Samford Glenn can withhold final payment until Carter & Carter provides a close-out document stating that the Surety consents to final payment. (*Id.*).

Despite no claims being made against the bonds issued on the Alabama project, the Surety refused to consent to final payment unless Samford Glenn agreed to pay the Surety instead of Carter & Carter. (*Id.* ¶ 41). Because the Surety hasn't consented to payment, Samford Glenn has refused to provide Carter & Carter the final payment for the Alabama project. (*Id.*).

## C.   Procedural History

After the Surety sent the first demand letter, Carter & Carter sued the Surety in Alabama state court for one count of breach of contract. (Doc. 1-1). After the Surety sent the second demand letter, it sued Carter & Carter in the Eastern District of Texas, asserting that Carter & Carter's refusal to pay breached the indemnity agreement. *See Zurich American Ins. Co., et al., v. Carter & Carter Constr., LLC, et al.*, Case No. 4:22-cv-196-ALM (E.D. Tex. Mar. 14, 2022).

The Surety removed Carter & Carter's state court case to this court. Carter & Carter moved to amend the complaint. (Doc. 10). The court granted the motion, and Carter & Carter's amended complaint added claims for declaratory relief related to the Surety's demand letters. (Doc. 21). Samford Glenn then moved to intervene and interplead the funds related to the final payment for Carter & Carter's work on the Samford Trace apartments. (Docs. 32 & 34). The court granted the motions, allowed Samford Glenn to file an interpleader complaint, and ordered Samford Glenn to deposit the funds with the Clerk of Court. (Doc. 36). After Samford Glenn filed its interpleader complaint, Carter & Carter filed the now-operative second amended complaint, adding allegations related to the Samford Trace final payment. (Doc. 48).

## JURISDICTION

Individual plaintiffs Casey M. Carter and Bradley Collin Carter are both citizens of Alabama. (Doc. 48 at 2). And Casey Carter and Bradley Carter are the only members of the plaintiff LLCs, (*see* doc. 44), so the plaintiff LLCs are also Alabama citizens, *see Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013). Defendant Zurich American Insurance Company is a New York corporation with its principal place of business in Illinois. (Doc. 1 at 1). And both Fidelity and Deposit Company of Maryland and Colonial American Casualty and Surety Company are Maryland corporations with a principal place of business in Maryland. (*Id.*). So the parties are completely diverse. And Carter & Carter's claims, which relate to demands of payment of $819,737.47 and $17,000,000.00, are worth more than $75,000. (*See* Doc. 48 at 3). As a result, this court has diversity jurisdiction over this case.

## STANDARD OF REVIEW

Because this is a Rule 12 motion, the court accepts the allegations in Carter & Carter's complaint as true and construes them in the light most favorable to Carter & Carter. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether Carter & Carter's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). If the facts as pleaded could entitle Carter & Carter to relief, then the court must deny the Surety's motion to dismiss. If, however, the court accepts all of Carter & Carter's pleaded facts as true, and Carter & Carter still would not be entitled to relief, then the court must grant the motion.

## DISCUSSION

Carter & Carter's second amended complaint includes four counts. Count 1 alleges that the Surety breached the obligation of good faith and fair dealing by attempting to seize the Weco project funds and demanding collateral of $17 million. Count 2 seeks a declaratory judgment that Carter & Carter doesn't need to comply with the Surety's demand letters because the Surety's actions weren't taken in good faith. Count 3 alleges that the Surety breached the obligation of good faith and fair dealing by not consenting to final payment for the Alabama project. And Count 4 seeks a declaratory judgment that the Surety has no right to demand payment from Samford Glenn because its actions weren't taken in good faith.

## I.   Breach of Contract (Counts 1 and 3)

In both Count 1 and Count 3, Carter & Carter asserts that the Surety breached its obligation of good faith and dealing under the indemnity agreement. The Surety argues that these claims fail because: (1) Alabama doesn't recognize a cause of action for breach of an express or implied obligation of good faith and fair dealing, (2) the plain language of the indemnity agreement doesn't impose an affirmative duty of good faith and fair dealing on the Surety, and (3) the Surety cannot be held liable for exercising its rights under the indemnity agreement.

1. <u>Good faith & fair dealing</u>: Under Alabama law, every contract imposes an obligation of good faith and fair dealing. *See Tanner v. Church's Fried Chicken, Inc.*, 582 So. 2d 449, 451–52 (Ala. 1991). But this obligation is directive, not remedial. *See id.* at 452. So the "failure to act in good faith in performance or enforcement of contracts . . . does not state a claim for relief that may be granted in Alabama." *Gov't St. Lumber Co., Inc. v. AmSouthBank*, N.A., 553 So. 2d 68, 72 (Ala. 1989).[1] Instead, "in order to prove a breach of contract on the part of the defendant, a plaintiff must prove that the defendant expressly breached a specific term of the contract." *Camp v. Ala. Telco Credit Union*, 2013 WL 2106727, at \*3 (N.D. Ala. May 13, 2013).

2. <u>Indemnity agreement</u>: Carter & Carter says that the specific term that the Surety breached is the part of the indemnity provision that conditioned Carter & Carter's liability on the Surety's good faith:

> The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under ***the Good Faith belief*** that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed.

(Doc. 48-1 at 2 (emphasis added)). According to Carter & Carter, this provision "requires that 'all actions' taken by [the Surety] in relation to all claims made on, payments by, or loss incurred by [the Surety] must be done in good faith." (Doc. 56 at 9).

The court agrees with the Surety that this provision unambiguously explains only when Carter & Carter must indemnify the Surety. It doesn't provide that the Surety's failure to act in good faith makes the Surety liable to Carter & Carter. Reading the provision that Carter & Carter cites in context makes this clear:

---

[1] Alabama also doesn't recognize the tort of bad faith against sureties. *See Goudy Constr., Inc. v. Raks Fire Sprinkler, LLC*, 2019 WL 6841067, at \*5 (N.D. Ala. Dec. 16, 2019). Recognizing this, Carter & Carter has confirmed that its claims are for breach of contract, not the tort of bad faith. (Doc. 56 at 15).

2. INDEMNITY: Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability.  The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed.  Indemnitors shall promptly, upon demand, make payment to Surety as soon as liability or Loss exists, whether or not Surety has made any payment.  An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be prima facie evidence of the fact, amount and extent of the liability of Indemnitors for such Loss.  Indemnitors shall promptly, upon demand, procure the full and complete discharge of Surety from all Bonds and all liability in connection with such Bonds.  If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations.

(Doc. 48-1 at 2).

To be sure, the indemnity agreement limits Carter & Carter's liability to acts that the Surety took in good faith. But Carter & Carter's remedy for the Surety's failure to act in good faith isn't to sue the Surety for breach of contract. Instead, Carter & Carter may point to the Surety's lack of good faith in ***defending*** a claim that it breached the indemnity agreement or in bringing a declaratory judgment action to ward off suit by the Surety.

The cases Carter & Carter cite align with this holding. For example, in *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 571 F.3d 1143, 1151 n.10 (11th Cir. 2009), the Eleventh Circuit interpreted an indemnity agreement that extended liability to "any and all amounts 'paid in good faith by the surety' in settlement of any claim, 'under the belief' that it was liable, whether liable or not." As the Eleventh Circuit recognized, this provision meant that "Auto-Owners would be entitled to indemnification only for payments made in good faith." *Id.* So the court reinstated the jury's verdict that Southeast was not required to indemnify Auto-Owners because Auto-Owners had settled a claim on the bond in bad faith. *Id.* at 1155–56. The court did not hold that the jury's bad-faith finding meant that Auto-Owners was liable to Southeast for breach of contract, the claim that Carter & Carter seeks to bring here.

—

In short, Alabama law doesn't recognize a cause of action for breach of the implied obligation of good faith and fair dealing. And the indemnity agreement doesn't provide that the Surety is liable to Carter & Carter if it fails to act in good faith. So the court will grant the motion to dismiss the breach of contract claims without addressing the Surety's third argument for dismissal.

## II.      Claims for Declaratory Relief (Counts 2 and 4)

In Counts 2 and 4, Carter & Carter brings claims for declaratory relief. The Surety asks the court to exercise its discretion to refrain from considering these claims for relief because the parties can adequately litigate their dispute in the case brought in the Eastern District of Texas.[2]

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "In its discretion, a district court may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc., v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). "The factors relevant in deciding whether to hear a declaratory judgment action are equitable in nature." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

"When relevant, the similarity between concurrent proceedings is a consideration of significant weight." *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1285 (11th Cir. 2021). So "[t]he more that a concurrent state (or federal) court action is similar to a federal declaratory judgment action, the more likely it will be that a district court's decision to not address a claim under § 2201(a) will be left undisturbed." *Id.* Also relevant is which case was filed first. *Manuel*, 430 F.3d at 1135. Indeed, "there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Id.* So "the party objecting to jurisdiction in the first-filed forum" must "carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Id.* One equitable factor for the court to consider is whether the declaratory judgment action was filed in anticipation of suit. *Id.* Other factors to consider are the convenience of the parties and the forum's connection with the controversy. *Id.*

---

[2] To the extent that Carter & Carter bases portions of its requested declaratory relief on the Surety having breached the indemnity agreement, the Surety asks the court to dismiss those allegations for failing to state a claim. For the same reasons why the court is dismissing Carter & Carter's breach of contract claims, the court will dismiss Carter & Carter's claims requesting that the court find that the Surety breached the indemnity agreement.

1. <u>Waiver</u>: Carter & Carter says that the court shouldn't consider the Surety's motion to dismiss the claims for declaratory relief because the Surety didn't move to dismiss Carter & Carter's initial complaint for improper venue. According to Carter & Carter, the Surety's motion to dismiss the declaratory judgment claims is substantively a motion to dismiss for improper venue under Rule 12(b)(3), so the Surety waived the motion by not making it in its first responsive pleading.

The court disagrees. The Surety's motion to dismiss doesn't assert that venue is improper in this court. Instead, the Surety asks the court to exercise its discretion to refuse to consider a declaratory judgment action that raises issues the Surety contends would better be resolved by a pending direct action in Texas. Carter & Carter hasn't cited a case when a court found this specific argument waived, and the Eleventh Circuit has affirmed the dismissal of a declaratory judgment action in favor of a direct action at the summary judgment stage. *See Ven-Fuel*, 673 F.2d at 1195. Plus, the court doesn't read the Surety's references to Carter & Carter's agreement to submit to the jurisdiction of the Surety's choosing as asserting that the forum-selection clause bars Carter & Carter from bringing its claims in this court. Instead, the Surety merely points to this provision as support for the argument that this court should defer to the Texas indemnity action.

Besides, the Surety had a valid reason for not seeking dismissal on this basis in its first motion to dismiss—Carter & Carter's original complaint included only one breach of contract count (doc. 1-1). It wasn't until Carter & Carter amended its complaint that it included requests for declaratory relief. (Doc. 21). The Surety then promptly moved to dismiss Carter & Carter's claims for declaratory relief because of the Texas indemnity action. (Doc. 30). For both these reasons, the court finds that the Surety didn't waive the argument that the court should exercise its discretion to dismiss Carter & Carter's claims for declaratory relief.

2. <u>Count 2</u>: So the court turns to the merits of the Surety's argument. In Count 2, Carter & Carter asks the court to declare: (1) the Surety made its demand letters arbitrarily, without a basis in fact, and with dishonesty, evil intent, and actual malice; (2) the Surety's actions weren't taken under the good-faith belief that it would be liable for the amounts paid or actions taken,

or that it was necessary or expedient to make such payments or take such actions; and (3) Carter & Carter doesn't have an obligation to comply with the Surety's demands or indemnify, provide payment, or deposit collateral in the amount demanded. (Doc. 48 ¶ 52(c)–(e)). At bottom, this count seeks a ruling that Carter & Carter needn't indemnify the Surety for its expenses related to the Weco and Frisco projects or deposit the $17 million in requested collateral.

The Surety asserts that the issues surrounding this claim can be fully resolved by the Texas indemnity action. Carter & Carter responds that the Surety has failed to show that 'compelling circumstances' support dismissing this first-filed case in favor of the Texas case.

The court questions whether this case should be considered the first-filed case for the purposes of deciding the Surety's motion to dismiss Count 2. As discussed, Carter & Carter's first complaint included only one breach of contract count. It wasn't until over a month after the Surety filed the indemnity action that Carter & Carter moved to amend the complaint to include a claim for declaratory relief related to the Surety's demand letters. So though this case was technically filed first, the Surety sued Carter & Carter for allegedly breaching the indemnity agreement before Carter & Carter asked for a declaratory judgment that it needn't comply with the Surety's demands.

Even if this is the first-filed case, the court finds that compelling circumstances support dismissing Count 2 in favor of the Texas case. For one, the court is dismissing the breach of contract claim that made this case the first-filed case. Plus, the Surety has shown that the claims brought in Count 2 were anticipatory. Carter & Carter says that this isn't an anticipatory suit because the January demand letter included no direct threat of imminent litigation. But again, the Surety had sent the February demand letter and filed the Texas indemnity action before Carter & Carter added its claims for declaratory relief. So by the time Carter & Carter filed Count 2 it *knew* the Surety had sued it for breach of contract. And even if the court were to only look at the January demand letter, that letter demanded that Carter & Carter pay the Surety $819,737.47 by January 14, 2022. The letter then said that if Carter & Carter didn't comply "the Surety will take those steps it deems appropriate to enforce its rights under the Indemnity Agreements, including, but not limited to, proceeding with a lawsuit, as well as any other remedies

available to the Surety, to fully enforce its rights." (Doc. 48-2 at 3). This threat of litigation is specific enough for the court to find that Carter & Carter's suit was anticipatory.

Other equitable considerations also support the court declining to entertain the requests for declaratory relief in Count 2. The Eastern District of Texas complaint includes three substantive counts: (1) Carter & Carter breached the indemnity agreement by failing to indemnify the Surety or deposit the demanded $17 million in collateral; (2) Carter & Carter breached its fiduciary duty by requesting distribution of funds held in South Carolina; and (3) Carter & Carter wrongfully converted the South Carolina funds by not turning those funds over to the Surety. (*See* Doc. 1 in *Zurich American*, Case No. 4:22-cv-196-ALM).[3] These claims cover the same subject matter as the issues that Carter & Carter ask the court to rule on in Count 2. And as the Surety points out, Carter & Carter seeks a declaratory judgment only on its bad-faith affirmative defense. But the Texas case will resolve the entire controversy over the Weco funds and demanded $17 million. Plus, though this district is a more convenient forum for Carter & Carter, it has little connection to the dispute over indemnification for expenses related to the Frisco and Weco projects. The Eastern District of Texas, in contrast, is where at least some of the Surety's alleged bonded obligations arose. So after considering the relevant factors, the court finds that it should abstain from ruling on the merits of Count 2 so that the Texas court can rule on the merits of the dispute over the Frisco and Weco projects.

3. <u>Count 4</u>: The court reaches the opposite conclusion when it comes to Count 4. In Count 4, Carter & Carter asks the court to declare: (1) that the Surety's demands to the Alabama project owner were made arbitrarily, without a basis in fact, with dishonesty, evil intent, and actual malice; (2) that though the Surety made demands to the Alabama project owner, the Surety's claims arise out of other, unrelated projects; (3) that the Surety's actions were not taken under the good-faith belief that it would be or was liable "for any amounts on the Alabama Project;" and (4) that the Alabama project owner needn't comply with the Surety's demands. (Doc. 48 ¶ 61(c)–(f)).

---

[3] This court may take judicial notice of filings in other courts. *See Cunningham v. Dist. Att'y's Off. for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).

Unlike with the parties' disputes over the Frisco or Weco projects, the Surety hasn't sued Carter & Carter over the Alabama project's disputed final payment. Indeed, the Eastern District of Texas complaint doesn't even hint that there's a dispute over the Alabama project final payment. (*See* Doc. 1 in *Zurich American*, Case No. 4:22-cv-196-ALM). Nor has the Surety shown that it sent a demand letter related to the Alabama project or otherwise threatened litigation over the refusal to release the final payment to the Surety. Instead, the only communication in the record is an email informing Carter & Carter that the Surety will not consent to the final payment unless Samford Glenn agrees to release the final payment to the Surety. (Doc. 48-4). So the court finds that the claims for declaratory relief in Count 4 are the first filed claims related to the Alabama project dispute and that they aren't anticipatory.

Other factors also support resolving the claims for declaratory relief brought in Count 4 in this court. First, the claims related to the Alabama project are distinct from the claims related to the $17 million collateral demand and withholding of the Weco funds. Though a preliminary issue that the courts will need to resolve with all three disputes is whether Carter & Carter owes the Surety, there are unique issues that relate solely to the Alabama project dispute. For example, the court will need to determine whether the Surety can lay claim to the final payment if its claims arise from projects other than the Alabama project. Second, after both the Surety and Carter & Carter lodged competing claims to the final payment, Samford Glenn appropriately filed an intervenor complaint in intervention and deposited the final payment funds with this court. (Docs. 37, 39). Judicial economy and efficiency support this court deciding the interpleader claims and Carter & Carter's request for declaratory relief at the same time. Finally, this district is a more convenient forum to litigate issues over the Alabama project and has more of a connection to the Alabama project dispute than the Eastern District of Texas. That's because two of the three stakeholders to the Alabama project dispute are companies based in this district. And the Samford Trace apartments, the construction project at issue, is also in this district. Based on consideration of all these equitable factors, the court will deny the Surety's motion to dismiss Count 4.

### CONCLUSION

In summary, the court will **GRANT IN PART** and **DENY IN PART** the Surety's motion to dismiss (doc. 52). Because Carter & Carter has already twice amended its complaint and amending the breach of contract claims against the Surety would be futile, the court will **DISMISS WITH PREJUDICE** Counts 1 and 3. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The court will **DISMISS WITHOUT PREJUDICE** Count 2 so that the parties may litigate the issues surrounding the Frisco and Weco projects in the Eastern District of Texas. The court will **DENY** the motion to dismiss Count 4.

The court will enter a separate order that carries out these rulings.

**Done** on March 8, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE